```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RUDOLPH KORNMANN,                                           :
                                                            :
                                    Plaintiff,              :
                                                            :   MEMORANDUM DECISION
            -against-                                       :   AND ORDER
                                                            :
THE CITY OF NEW YORK BUSINESS                               :   17-cv-2328 (BMC) (SMG)
INTEGRITY COMMISSION; MICHAEL                               :
DEL PINO; MATTHEW GONZALEZ;                                 :
JOHN CURRY and JOHN AND JANE DOES                           :
1-10,                                                       :
                                                            :
                                    Defendants.             :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this employment discrimination action alleging that his employer denied him accommodations for his disability, retaliated against him for complaining, and then constructively discharged him. His claims arise under the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. ("NYCHRL"). Defendants, his former employer and supervisors, have moved for summary judgment. Plaintiff's requests for reasonable accommodations under the ADA were not timely exhausted, and I therefore grant summary judgment dismissing that claim. However, I am denying the motion for summary judgment as to plaintiff's remaining claims because there are genuine issues of material fact.

## BACKGROUND

Plaintiff worked for defendant, the City of New York Business Integrity Commission ("BIC"), an anti-corruption agency of the City of New York, for approximately 25 years, the last

15 years of which as a "Computer Associate."  He suffers from chondromalacia, a condition that erodes cartilage between the joints.

His second amended complaint is mostly a historical rendition of the back and forth between the parties over the years from 2007-2015 resulting from plaintiff's efforts to obtain accommodations for his disabling condition.  The only points of consequence prior to 2015 are that sometime between 2010-2014, plaintiff had filed a complaint with the EEOC claiming retaliation after requesting a reasonable accommodation; that plaintiff was in frequent communication with BIC's Human Resources department during that period complaining about BIC's failure to accommodate his disability; and that in January 2015, plaintiff's direct supervisor, defendant Michael Del Pino, the IT Director for BIC, had sent an email to other BIC officials, expressing displeasure at plaintiff's commitment to BIC "given [plaintiff's] personal issues with lateness, excessive use of sick leave and overall dissatisfaction raised through numerous formal and informal complaints."

In the parties' summary judgment submissions, the specifics of those disputes are referenced only in passing.  Instead, both sides focus on a meeting between plaintiff and his supervisor on November 4, 2015 (the "November 4th meeting), and a follow-on meeting of November 13, 2015, as a result of which BIC suspended him and initiated the administrative process for his termination as a city employee. The November 4th meeting occurred at Del Pino's request. There, Del Pino "counseled" (human resources-speak for "formally admonished") plaintiff for failing to give notice to BIC on three days in October that he was going to be out.  According to BIC's Time/Sick Leave Policy: "If you take an undocumented sick leave, you must call your supervisor and Human Resources at least one (1) hour before you are scheduled for work."  Del Pino told plaintiff that as a result of violation of this policy, Del

Pino was changing plaintiff's shift from a start time of 10:00 a.m. to 9:00 a.m. Plaintiff claims he requested a "flex" schedule so that he could come to work later in the day to avoid the crowded trains, as the inability to get a seat aggravated his chondromalacia. Del Pino denied plaintiff's request, and plaintiff told Del Pino that he intended to file a grievance over the schedule change.

According to Del Pino, plaintiff's response at the meeting to his reprimand and schedule change was to say, "I would never do it, but friends of mine have asked me how you don't just show up at work with an AK-47 given everything they have put you through." In this action, plaintiff denies making any such statement.

The day after the meeting, Del Pino prepared a "counseling memorandum" addressed to plaintiff that summarized their meeting (the "November 5th Memorandum"). It did not reprimand plaintiff for making the alleged AK-47 statement or even mention that statement. It simply noted plaintiff's schedule change as a result of his time and attendance problems. Plaintiff signed and acknowledged receipt of the November 5th Memorandum "in protest," and Del Pino sent it Cindy Haskins, Director of Personnel Services at the in BIC. She, in turn, forwarded it the same day to defendant John Curry, the Disciplinary Advocate and Deputy General Counsel in BIC's legal department.

Del Pino's deposition testimony was ambiguous as to when he first orally relayed the alleged AK-47 statement to anyone at BIC.[1] He sent his first written report of the statement to Haskins and Curry (among others) four days after his meeting with plaintiff, on November 9, 2015, although his memorandum relaying the statement was dated November 10, 2015 (the

---

[1] "I don't recall. It may have been the next day during normal business hours."

3

"November 10th Memorandum"). The November 10th Memorandum recited that Del Pino had met with plaintiff, discussed his time and attendance issues, and that Del Pino had prepared the November 5th Memorandum. The November 10th Memorandum then stated: "During the course of the conversation Mr. Kornmann stated the following: 'I would never do it, but friends of mine have asked me how you don't just show up to work with an AK-47 given everything they put you through.'" Although this is the first written documentation of the alleged AK-47 statement, it seems likely that Del Pino had discussed it with Haskins either on or prior to November 9th, as his cover memorandum to her stated: "See attached. I kept it short and to the point. Let me know if you need more on this."

On November 13, 2015, plaintiff was called to a meeting with Haskins and Curry. They told him that in light of his statement referencing an AK-47 to Del Pino (which plaintiff asserts he was hearing for the first time), he was being immediately suspended without pay. He was escorted from the building. He was forced to surrender his credentials. And he was prohibited from reentering the building.

On November 24, 2015, Curry and Haskin attended a meeting with plaintiff's union ("DC-37") at DC-37's offices ostensibly to resolve the charges (no doubt as per their collective bargaining agreement). Plaintiff advised BIC the day before the conference that he would not or could not attend. The effort at resolution was unsuccessful. In fact, although plaintiff denies receiving it until his union representative gave it to him on January 16, 2016, BIC had already prepared and sent, or prepared immediately after the meeting and sent, a set of Charges and Specifications based on plaintiff's alleged AK-47 statement.

We know this because on that same day as the November 24th meeting, BIC sent to plaintiff, copied to DC-37, a letter captioned "Notice of Settlement Conference/Hearing at

4

OATH," which "confirm[ed] that you and your union, DC-37, have been properly served with the Charges and Specifications… ." The letter recited that BIC and DC-37 had met that day; that plaintiff had been absent; and that BIC's decision following the meeting that day was "to seek TERMINATION of your employment … based upon the Charges and Specifications" pursuant to N.Y. Civ. Serv. L. § 75. Finally, the letter advised plaintiff that BIC would request a pre-termination hearing before the Office of Administrative Trials and Hearings ("OATH") on an expedited basis.

In this action, the parties agree that although the OATH hearing was a necessary step under BIC's collective bargaining agreement with DC-37 prior to plaintiff's termination, BIC would not be bound if the OATH Administrative Law Judge recommended against termination, but could terminate plaintiff anyway. That was confirmed to plaintiff by Curry and plaintiff's union representative during a pre-hearing settlement conference on January 4, 2016, at which Curry told plaintiff that BIC was going to terminate him regardless of the result of the OATH hearing. Plaintiff was also told that if the ALJ found he was subject to termination for misconduct, plaintiff might lose his pension. According to plaintiff, this meeting was the first time he learned that BIC intended to fire him because, as noted above, he denies receiving the November 24th letter and the Charges and Specifications.

Plaintiff maintains that because of the non-binding nature of the OATH hearing, it would have been futile to proceed with it. He therefore submitted his resignation on January 7, 2016. effective as of February 2, 2016. He filed his administrative charge of disability discrimination and retaliation before the U.S. Equal Employment Opportunity Commission on October 19, 2016.

5

Plaintiff commenced this action on April 17, 2017. His second amended complaint alleges eleven claims for relief: (1) discriminatory discharge under the ADA; (2) failure to accommodate under the ADA; (3) retaliation under the ADA; (4) discrimination on the basis of disability under N.Y. Executive Law § 296; (5) failure to accommodate, (6) retaliation, and (7) aiding and abetting discrimination and retaliation under the same state statute; (8) discrimination on the basis of disability under N.Y.C. Admin. Code § 8-107; and (9) failure to accommodate, (10) retaliation, and (11) aiding and abetting discrimination and retaliation under the same state code.

## DISCUSSION

### I.

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A dispute as to a material fact is "'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Id. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. When deciding a

motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (internal quotation mark omitted).

## II.
### A.

The ADA's exhaustion provision requires that a claimant file an administrative complaint with the EEOC within 300 days of the discriminatory act. See 42 U.S.C. §§ 2000(e)-(5)(e)(1); 42 U.S.C. § 12117; Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003).

Defendants contend that plaintiff's discrimination claim accrued when he was suspended without pay on November 13, 2015. However, when the adverse employment action is a constructive discharge, the employee holds the key to when his claim accrues for purposes of the 300-day period. In Green v. Brennan, 136 S. Ct. 1769, 1782 (2016), the Supreme Court held that it was the act of "resignation [that] triggers the limitations period for a constructive-discharge claim." An employee does not resign until he provides notice of his intent to end his employment, regardless of when he last worked for his employer.

Plaintiff resigned on January 7, 2016. Therefore, his administrative charge filed with the EEOC – 286 days later – fell within the relevant time limitations. His constructive discharge claim is administratively exhausted.

Defendants rely on a false syllogism to argue otherwise. First, they point out that a constructive discharge claim is a specie of hostile work environment claim, see Yin v. N. Shore LIJ Health Sys., 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014). Second, they note that a hostile work environment claim must be based on the employer's workplace misconduct, citing cases like Weisbecker v. Sayville Union Free Sch. Dis., 890 F. Supp. 2d 215, 235 (E.D.N.Y. 2012). Third, they contend that since plaintiff was suspended on November 13, 2015, and never returned to the

workplace, BIC could not have engaged in any workplace misconduct after that date. From these assumptions, they conclude that plaintiff could not have a constructive discharge claim that accrued later than November 13, 2015.

Plaintiff has submitted evidence that at least raises a factual issue as to whether there was interaction between BIC and plaintiff subsequent to his suspension. First, although defendants have shown that they mailed the Charges and Specifications document on November 24th, plaintiff claims that he did not receive it until January 2016. Second, plaintiff asserts that it was in January 2016 that Curry and his union representative told him that BIC intended to fire him, with the possible loss of his pension, regardless of the outcome of the OATH hearing. These interactions are as much a part of the employer's "workplace conduct" as the parties' earlier interactions. They contribute to plaintiff's constructive discharge claim, and both occurred within the 300-day period.

For similar reasons, at least part of plaintiff's retaliation claim under the ADA was timely exhausted. Since the act of retaliation consisted of a constructive discharge, the 300-day period did not accrue until plaintiff resigned.[2]

Although plaintiff's constructive discharge and retaliation claims were therefore timely exhausted under the ADA, his failure to accommodate claims are not. The last failure to accommodate that he alleges occurred at the November 4, 2015 meeting when Del Pino refused his request for a schedule accommodation.[3] That is more than 300 days before he filed his

---

[2] When asked at oral argument what the adverse action was following plaintiff's November 13th suspension, plaintiff's counsel identified only the constructive discharge in January.

[3] Plaintiff raises two arguments that require little discussion. First, he claims that he repeated his request for an accommodation at the January 4, 2016 pre-hearing settlement meeting. But by that time, he had been suspended without pay and told that BIC intended to fire him. He cannot bootstrap himself into a failure to accommodate claim at that late point by simply repeating the request he had made on November 4th. Second, he claims his November 4th request for an accommodation was never denied, and thus the statute of limitations did not begin to run until his constructive termination. But that is belied by the record; plaintiff would not have expressed his intent to grieve his

EEOC charge, and thus that alleged failure to accommodate, and any failures prior to it, were not exhausted within 300 days.

**B**.

The statute of limitations for plaintiff's NYSHRL and NYCHRL claims is three years. See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin Code § 8-502. Each failure to accommodate a request for accommodations is a discrete act for statute of limitations purposes. See Gomez v. New York City Police Dep't, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016).

Plaintiff's claims for failure to accommodate as requested in the November 4, 2015 meeting and for constructive discharge based on his January 7, 2016 resignation are therefore timely under state and local law. However, plaintiff alleges no other failure to accommodate or other discrimination claims that occurred within the three year period prior to his commencement of this case.[4] Any earlier claims for failure to accommodate are therefore time-barred.

**III.**

Claims alleging ADA disability discrimination are derived from the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).[5] At step one, a plaintiff must make out a *prima facie* case by showing that (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential

---

new schedule if his request had not been denied, and his suspension nine days later was as clear a statement as needed that BIC was not going to make scheduling accommodations for him.

[4] See preceding footnote.

[5] The elements for finding discrimination under NYSHRL and NYCHRL generally track the ADA. See Kinneary v. City of New York, 601 F.3d 151, 155–56 (2d Cir. 2010); Ugactz v. United Parcel Service, Inc., No. 10-cv-1247, 2013 WL 1232355, at *14 (E.D.N.Y. March 26, 2013). There are a few differences between the federal and non-federal claims but other than the procedural differences noted above, none of them are material here.

9

functions of his job with or without reasonable accommodations; and (4) he suffered an adverse employment action because of his disability. Id. In determining whether the plaintiff has met his burden, the court may consider only the evidence presented by the plaintiff, see Graham v. Long Island R.R., 230 F.3d 34, 42 (2d Cir. 2000), and the plaintiff must make only a *de minimis* showing. See Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

At step two, a defendant must "articulate some legitimate, nondiscriminatory reason for its action," but "need not persuade the court that it was actually motivated by the proffered reason." Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted). If the defendant makes that showing, then, at step three, the burden shifts back to the plaintiff to show a factual issue that either "the proffered reason was merely a pretext for discrimination," Heyman v. Queens Village Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999); or that the same evidence that the plaintiff relied on for his *prima facie* case is sufficient to raise a factual issue, see Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001); or that there are additional circumstances demonstrating facts that are in dispute, see Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005).

For purposes of this motion, defendants do not dispute that plaintiff has satisfied the first three factors for his *prima facie* case, but contest whether plaintiff has shown the fourth factor, i.e., that his termination was the result of his disability. However, plaintiff has easily met his *de minimis* burden. His claim is that instead of making a reasonable scheduling accommodation for his chondromalacia, Del Pino: (1) put him on a schedule that plaintiff's condition would make painful or impossible to keep, thus setting him up for failure; (2) rather than waiting for him to file and proceed to a grievance hearing for the failure to accommodate, Del Pino made up a story about a gun threat; and (3) BIC determined to fire plaintiff, at the possible cost of his pension,

based on the false gun threat, even if an ALJ at an OATH hearing recommended against it, unless plaintiff agreed to resign. Construing the record in the light most favorable to plaintiff, the recitation of the evidence in this decision shows that there is at least circumstantial evidence to support each one of these contentions, and direct evidence to support most of them.

BIC has a proffered a *bona fide* business justification for plaintiff's termination – the gun threat – and has thereby discharged its burden at step two of McDonnell-Douglas. See Brown v. Soc'y for Seaman's Children, 194 F. Supp. 2d 182, 191–92 (E.D.N.Y. 2002). However, the dispute as to whether plaintiff even made the gun statement leaves us with a factual issue at step three.

If Del Pino fabricated the gun statement, as I must assume for purposes of this motion, then a jury has to determine why. It might find that Del Pino was tired of plaintiff's complaining about his disability and didn't want to accommodate his schedule. It might also find that Del Pino thought that plaintiff's complaints about his disability would continue to make him a problematic employee in terms of his time and attendance, and therefore dismissed consideration of plaintiff's chondromalacia. Of course, the jury might instead find that plaintiff actually made the gun statement. Or it might find that plaintiff was goldbricking, exaggerating his disability to request accommodations that he didn't need. But I am not going resolve these factual issues on summary judgment.

## IV.

The applicable standard for defeating a summary judgment motion for an ADA retaliation claim is also adapted from McDonnell Douglas Corp., 411 U.S. at 802–05, discussed above. To summarize, the plaintiff must first establish a *prima facie* case of retaliation by showing that:

11

> (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity, (3) the employer took adverse employment against him, and (4) a causal connection exists between the alleged adverse action and the protected activity.

Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Upon such a showing, the employer must articulate legitimate non-discriminatory reasons for its actions. If it does so, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation. Id. at 721.[6]

Defendants contend that plaintiff cannot demonstrate the causation required for factor four of his *prima facie* case or the third step of McDonnell-Douglas because he resigned before the OATH hearing. I reject that argument for two reasons.

First, the time between the protected activity – the request for accommodation at the November 4th meeting and the threat to grieve Del Pino's denial of that accommodation, and the adverse action – plaintiff's constructive discharge – is short. Even with the constructive discharge claim having accrued on January 7, 2016 when plaintiff resigned, it is just over two months. Many cases hold that temporal proximity between the protected conduct and the adverse action is sufficient to establish a *prima facie* case. See, e.g., Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110–11 (2d Cir. 2010); Risco v. McHugh, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012). And it is not as if defendants spent that time idly – they used the time to implement the process to get plaintiff fired. Their reaction to plaintiff's protected activity occurred within days of Del Pino's written report of the gun threat.

---

[6] Although "[t]he standards for evaluating … retaliation claims are identical" under the ADA and NYSHRL, see Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013), a claim under the NYCHLR is governed by a standard more favorable to plaintiff. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013).

Second, Green v. Town of East Haven, 952 F.3d 394, 404 (2d Cir. 2020), requires me to reject defendants' argument. There, a police officer was being investigated for minor misconduct. In anticipation of a pre-termination hearing, the investigating internal affairs officer and the Chief of Police told her that she would likely be fired; that her fellow officers no longer trusted her; and that if she was eligible for retirement, she should take it prior to the hearing. Her union representative told her that if she proceeded with the hearing, she would "almost certainly" lose. The Second Circuit reversed the district court's dismissal of her age discrimination claim on summary judgment, holding that a jury "could rationally find that an employee in Green's shoes would have felt compelled to submit her resignation stating that she was retiring, rather than face nearly certain termination." Id. at 409.

I cannot find any meaningful distinction between this case and Green. If anything, plaintiff's case here is stronger, for the administrative hearing that Green chose to forego was not merely advisory, but binding; nevertheless, the Second Circuit relied on the fact that Green had been told by her union representative and other employees that the hearing would "likely" or "almost certainly" result in her termination. Id. at 408. Here, plaintiff received advice from his union representative that BIC would not be bound by the result in the OATH hearing, and Curry made it clear to plaintiff that BIC was going to fire him regardless of its outcome. If true, that is a viable constructive discharge claim.

## CONCLUSION

Defendants' [90] motion for reconsideration for summary judgment is granted in part and

denied in part. The failure to accommodate claim under the ADA is dismissed, and the remaining claims shall proceed to trial.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       June 15, 2020