17 CV 2328(BMC)(SMG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUDOLPH KORNMANN,

Plaintiff,

- against -

THE CITY OF NEW YORK BUSINESS INTEGRITY
COMMISSION,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York

Attorney for Defendants
100 Church Street
New York, New York 10007

Of Counsel:

Jessica Giambrone
(212) 356-2460
jgiambro@law.nyc.gov

Rebecca Quinn
(212) 356-4832
rquinn@law.nyc.gov

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

       POINT I

           LEGAL STANDARD FOR POST-TRIAL
           MOTIONS PURSUANT TO RULE 50(B) .............................................. 2

       POINT II

           PLAINTIFF FAILED TO ESTABLISH BY A
           PREPONDERANCE OF THE EVIDENCE ANY
           NEXUS BETWEEN HIS STATED DISABILITY
           AND THE REQUEST FOR FLEX-TIME ................................................ 4

       POINT III

           PLAINTIFF FAILED TO ESTABLISH THAT
           HE WAS CAPABLE OF PERFORMING THE
           ESSENTIAL FUNCTIONS OF HIS JOB WITH
           OR WITHOUT AN ACCOMMODATION ......................................... 12

CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                    **Pages**

Callistro v. Cabo,
   2013 U.S. Dist. LEXIS 11176 (S.D.N.Y. Jan. 25 2013)..........................................................4

Cruz v. Local Union No. 3 of the Int'l Board. of Elec. Workers,
   34 F.3d 1148 (2d Cir. 1994).......................................................................................................2

D'Alessio v. Charter Communs.,
   2020 U.S. Dist. LEXIS 173332 ( E.D.N.Y. Sept. 21, 2020) .....................................................4

DiBella v. Hopkins,
   403 F.3d 102 (2d Cir. N.Y. 2005).............................................................................................3

Drake v. Delta Air Lines, Inc.,
   2005 U.S. Dist. LEXIS 14789 (E.D.N.Y. July 21, 2005) .........................................................2

Felix v. N.Y. City Transit. Auth.,
   324 F.3d. 102 (2d Cir. 2003)............................................................................................2, 4, 11

Ferraro v. New York City Dep't of Educ.,
   404 F. Supp. 3d 691 (E.D.N.Y. 2017) ..............................................................................12, 14

Jund v. Town of Hempstead,
   941 F.2d 1271 (2d Cir. 1991)....................................................................................................3

Levitant v. City of New York Human Res. Admin.,
   914 F. Supp. 2d 281 (E.D.N.Y. 2012) ......................................................................................2

Mattivi v. South African Marine Corp., "Huguenot",
   618 F.2d 163 (2d Cir. 1980)......................................................................................................3

McBride v. BIC Consumer Mfg. Co., Inc.,
   583 F.3d. 92 (2d Cir. 2009).......................................................................................................4

McMillan v. City of New York,
   711 F.3d 120 (2d Cir. 2013)......................................................................................................4

O'Connor v. Smith & Laqueria,
   LLP, 2010 U.S. Dist. LEXIS 94088 (E.D.N.Y. Sept. 8, 2010) ................................................4

Piesco v. Koch,
   12 F.3d 332 (2d Cir. 1993).......................................................................................................3

Sosa v. New York City Dep't of Educ.,
   406 F. Supp. 3d 266 (E.D.N.Y. 2019) ...............................................................................4, 11

**Cases**                                                                                         **Pages**

Stevens v. Rite Aid,
    851 F. 3d 224 (2d Cir. 2016)................................................................................3

Stryker v. HSBC,
    2020 U.S.Dist. LEXIS 158630 (S.D.N.Y. Aug. 21, 2020).......................................12

Tolbert v. Queens College,
    242 F.3d 58 (2d Cir. 2001)................................................................................3

**Statutes**

Fed. R. Civ. P. 50.......................................................................................................15

Fed. R. Civ. P. 50(b) ...........................................................................................1, 2

**Other Authorities**

9 Wright & Miller Federal Practice and Procedure: Civil § 2521 (1971 ed.)................................2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUDOLPH KORNMANN,

                                        Plaintiff,

              - against -

THE CITY OF NEW YORK BUSINESS INTEGRITY
COMMISSION,

                                        Defendants.

17 CV 02328(BMC)(SMG)

## PRELIMINARY STATEMENT

The trial in this matter commenced on September 27, 2021 and concluded on October 1, 2021 when the Jury returned with a partial verdict in favor of the Plaintiff. See Dkt. No 235, Jury's Verdict Form which is annexed to the affirmation of Jessica Giambrone as Exhibit "A."[1] On that day, the Jury found for the Defendant on Questions 1-4, but, in response to question five of the verdict sheet, they answered "yes" that "Plaintiff had proved by a preponderance of the evidence a claim of reasonable accommodation under the NYCHRL." See Id. The Jury went on to find, in question 7, that Plaintiff was *not* entitled to compensatory damages but did award him, as they were required to, nominal damages in the amount of $1.00. Id.

The City of New York Business Integrity Commission, the Defendant in this matter, now moves pursuant to Federal Rule of Civil Procedure 50(b) for an entry of judgment to set aside the Jury's finding as to question five because it asserts that, as a matter of law, Plaintiff failed at trial to prove the claim that he was unlawfully denied a disability accommodation under the New York City Human Rights Law ("NYCHRL"). Plaintiff's verdict should be set aside for

---

[1]   All exhibits mentioned refer to the exhibits annexed to the affirmation of Jessica Giambrone dated insert unless otherwise identified.

two reasons.

First, his claim should be set aside because he was unable to establish the threshold issue that there existed a nexus between his asserted medical condition, chondromalacia, and the accommodation sought, a "flex-time" band from 9:30-10:30 a.m. Second, and in addition to this incurable failure,  plaintiff's claim should be set aside because he was unable to prove by a preponderance of the evidence that, even with a reasonable accommodation, he could perform the essential functions of the job.  His inability to prove these separate components of a successful NYCHRL failure to accommodate claim now mandate the complete dismissal of his case.

Disability laws serve the important function of ensuring that those with disabilities are given the same opportunities and benefits as those without;  they are not however a means to give, as the plaintiff here wished to have, preferential treatment.  See generally, Felix v. N.Y. City Transit. Auth., 324 F.3d. 102, 107 (2d Cir. 2003).

## ARGUMENT

### POINT I

### LEGAL STANDARD FOR POST-TRIAL MOTIONS PURSUANT TO RULE 50(b)

Under Fed. R. Civ. P. 50(b), a party who previously moved for and was denied a motion for a judgment as a matter of law, may renew the motion after a judgment is entered against them.  Cruz v. Local Union No. 3 of the Int'l Board. of Elec. Workers, 34 F.3d 1148, 1155 (2d Cir. 1994).  Rule 50(b) permits the trial court "a last chance to order the judgment that the law requires."  9 Wright & Miller Federal Practice and Procedure: Civil § 2521 at 537 (1971 ed.).  A court may set aside a verdict where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue[.]"  See Drake v. Delta Air Lines, Inc., 2005

U.S. Dist. LEXIS 14789, *3 (E.D.N.Y. July 21, 2005); See also, Levitant v. City of New York Human Res. Admin., 914 F. Supp. 2d 281 (E.D.N.Y. 2012).  Such a judgment is based on all the evidence in the record taken as a whole, viewed in the light most favorable to the non-movant, without making credibility determinations or weighing the evidence. See DiBella v. Hopkins, 403 F.3d 102, 116 (2d Cir. N.Y. 2005); Jund v. Town of Hempstead, 941 F.2d 1271, 1290 (2d Cir. 1991). "A district court may set aside a verdict only where '(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him.'"  See DiBella, 403 F.3d at 116, citing Mattivi v. South African Marine Corp., "Huguenot", 618 F.2d 163, 168 (2d Cir. 1980); See generally Stevens v. Rite Aid, 851 F. 3d 224 (2d Cir. 2016).

Although the Court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury," Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001), this motion should be granted where the Court can conclude that, "with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party."  See Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993).  Even under this standard, plaintiff's  New York City Human Rights Law ("NYCHRL") failure to accommodate claim must be dismissed.

**POINT II**

**PLAINTIFF FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE ANY NEXUS BETWEEN HIS STATED DISABILITY AND THE REQUEST FOR FLEX-TIME**

To establish a prima facie failure to accommodate claim under the NYCHRL, plaintiff must establish by a preponderance of the evidence that (1) he has a disability as defined by the statute; (2) defendants knew or should have known about the disability; (3) with reasonable accommodation he could perform the essential functions of her job; and (4) defendants failed to make such accommodation. O'Connor v. Smith & Laqueria, LLP, 2010 U.S. Dist. LEXIS 94088 at *20 (E.D.N.Y. Sept. 8, 2010) See also, D'Alessio v. Charter Communs., 2020 U.S. Dist. LEXIS 173332, *8–9 ( E.D.N.Y. Sept. 21, 2020) citing McMillan v. City of New York, 711 F.3d 120, 125–26 (2d Cir. 2013). "Courts apply the same standard for failure to accommodate under the ADA and NYCHRL." See id. at *9 (internal citations omitted).   As a threshold matter,  "plaintiff must show a causal connection between the specific condition which impairs a major life activity and the accommodation."   Felix v. N.Y. City Transit Auth., 324 F.3d. at *107;   see also, Sosa v. New York City Dep't of Educ., 406 F. Supp. 3d 266, 269 (E.D.N.Y. 2019) (holding that, "a plaintiff's failure to establish a nexus between her qualifying disability and her request for an accommodation is fatal to a claim for failure to accommodate."). Plaintiff bears the initial burden of production and persuasion.  See Callistro v. Cabo, 2013 U.S. Dist. LEXIS 11176, *27–28 (S.D.N.Y. Jan. 25 2013)(citing from McBride v. BIC Consumer Mfg. Co., Inc., 583 F.3d. 92, 97 (2d Cir. 2009).

Plaintiff's claim that was he was unlawfully denied an accommodation pursuant to the NYCHRL must now be dismissed because he failed  at trial to establish a central element, namely, that there existed a nexus between his stated disability, chondromalacia – also known as

"runner's knee", and his purported request for an accommodation permitting him to begin his work day with a "flex-time" band that ran from 9:30-10:30 a.m.

Plaintiff asserted throughout the trial that he suffered from chondromalacia and that, as a result of this condition, he was unable to "sit and stand without pain." See e.g., Defendants Exhibit "B," Sept. 27, 2021 Trial Transcript at 43:6.   While Defendant did not dispute that chondromalacia itself could be deemed a qualifying disability for purposes of the statutes in this case, the issue of whether there was any nexus between this condition and the accommodation requested of "flex-time" was at the heart of the defense[2].   See Defendant's Exhibit "C," Sept. 28, 2021 Trial Transcript at 155:8-14; 155:23-156:5.   Throughout the trial, plaintiff was laser focused on the fact that what he truly desired was to have a flexible start time. Yet, at no point over the course of the trial did he actually establish why his condition of having pain while sitting or standing for 'prolonged periods' required a flexible start time.

In 1999 Plaintiff was initially employed by the Business Integrity Commission ("BIC") as the Director of the MIS unit.   See Defendant's Exhibit C at 220:14-22.   He was later demoted and reassigned to work at the agency as a computer associate.   Id. at 228:14-16. Between 1999 and sometime in 2008 BIC had a general policy of allowing flex-time for all of the employees of the agency.   See Defendant's Exhibit C at 234:24-235:2;   See also, Defendant's Exhibit B at 64:15-20.   Around 2008 the Agency decided to disallow the flex time policy,  a policy which allowed employees to begin their work day within an agency set period of time; at that time plaintiff decided to make an accommodation request to preserve flex time for his own

---

[2]   Though not pertinent for this  motion,  the defense at trial presented the fact that plaintiff's only written accommodation request was for a flex time band from 9-10 am or 9:30-10:30 am.   The defendant accommodated the plaintiff with a reasonable solution of a work day without "flex time" but which would start at 10 am which was during the time frame plaintiff had specifically requested.

use.  See Exhibit B at 64:15-25.   In 2013, Plaintiff made a written accommodation request whereby he requested, among other items[3],  "flex-time from 9:00 a.m. to 10:00 a.m. or 9:30 to 10:30 a.m."  See Defendant's Exhibit D,  Plaintiff's Exhibit 50 in evidence at trial.  In response to this request,  the agency, in light of the fact that it was no longer maintaining "flex" start hours, instead provided him with a daily schedule of 10 a.m. to 6 p.m.   Even with this schedule, which fell within the time span explicitly requested by the Plaintiff,  he continued to accrue issues with time and attendance,  issues which had begun and which were well documented prior to any accommodation request.  See Defendant's Exhibit E,  Defendants Trial Exhibit F in Evidence.  For example,  on August 1, 2000, prior to any diagnosis of chondromalacia or accommodation request, BIC documented that, "we have discussed your lateness many times….I specifically adjusted your flex time to 9:00 a.m. to 10:00 a.m. on Mondays and Wednesdays and 10:00 a.m. to 11:00 a.m. on Tuesdays, Thursdays and Fridays to accommodate your childcare needs…[d]espite that, you continued to be late for work.  Since February, you have come to work late at least one day per week during eight separate weeks… since May 21, you have continued to come to work late…[y]ou have come to work late at least one day per week during seven separate weeks."  Id.

At no point during the trial did plaintiff present any medical evidence, in the form of medical records or testimony from a provider, with regards to the specifics regarding his condition and *why* it required a need for a flexible start time between 9:30 a.m. to 10:30 a.m.   At trial,  Plaintiff asserted that the accommodation was sought because:

---

[3]   Plaintiff does not dispute that BIC accommodated his chondromalacia by providing him with a footstool, an ergonomic chair, the ability to stand and stretch, and the ability to walk around the office so long as he didn't interrupt colleagues while doing so.  See generally Defendant's Exhibit C,  September 28, 2021 Trial Transcript at 260:9-263:3.

> It made a big difference because the station that I have to get on near my home was one of the last stations before you went to Manhattan, it was always very crowded.  And it seemed to thin out a little later, but when I was there, it was very packed. And I had to go to another station nearby – I'm sorry, similar crowding to switch trains and had the same issue.  And I found it very difficult to avoid getting bumped into, sometimes it can even ben on the train.  I certainly didn't have the option to stand or sit, which I needed at that time.  So that's why I needed it.  And I wanted it back and I had it for years, so I didn't understand why--

<u>See</u>  Exhibit C,  September 28, 2021 Trial Transcript at 119:13-23.   Plaintiff alludes to the fact that he needed to alternate between standing and sitting but presents no evidence and never testifies as to how *long* he can sit or stand with his condition.  In fact,  at trial,  he acknowledged there were times when he was sitting during the proceedings for over an hour at a time.  <u>See</u> Defendant's Exhibit "C," September 28, 2021 Trial Transcript at 273:8-20.

On cross examination,  the details of Plaintiff's commute were brought to light. At that time,  the evidence established that Plaintiff's commute was only approximately 25-30 minutes long.

Q:      You lived at 199-201 President Street, Yes?

A:      Yes.

Q:      And you took the subway to work?

A:      Yes.

Q:      That was approximately a half an hour commute?

A:      Approximately, yes.

Q:      You would take two subways to get to the office??

A:      Yes.

Q:      And in the fall of 2014, the office was located at 100 Church Street, Right?

A:      Correct.

Q:      So, I wanted to look at your commute a little bit closer.  You would leave your house and walk about seven minutes, right?

A:      Approximately.

Q:      You would get to the Carroll Street station, right?

A:      Yes.

Q:      You would pick up the train there and ride it for about two to four tops, right?

A:      Depends on which train, yes?

Q:      And you would have to transfer across the platform, right?

A:      Correct.

Q:      No Stairs, correct?

A:      No stairs for the transfer but there were stairs to get down to the station. There was no elevator or escalator.

Q:      Sure, Sure, it's a subterranean subway, yes?

A:      Yes

Q:      So you crossed the platform, right?

A:      Yes.

Q:      And then you have another approximately three stops, right?

A:      Again, it depends on which train I was on.

Q:      And then you're out at Chambers Street station, right?

A:      Yes.

Q:      And 100 Church Street is pretty much directly above the Chambers street

station, right?

A:     Right, again no elevator or escalator.

Q:     Any isn't it a fact that entire subway ride was about 25-30 minutes?

A:     Ideally, yes.

<u>See</u> Defendant's Exhibit "C," September 28, 2021 Trial Transcript at 275:9-276:24.

So, Plaintiff's entire commute was conducted over two subways, each with a handful of stops and a transfer over a platform which required no stairs etc.  Even if one credits Plaintiff's testimony that he needed to alternate between sitting and standing, even on a day where there were no other commuters, in light of the commute itself, logic dictates that any standing or standing would be momentary.  Most importantly, however,  Plaintiff presents no evidence as to how *long* he can sit or stand comfortably or how *often* he medically needs to change position.   Furthermore,  there is no evidence that there is something about plaintiff's chondromalacia that requires him to have distance between himself and other commuters. Finally,  there is no evidence in the record that explains what it is about his condition that requires his start time to be <u>flexible</u>.  Plaintiff fixated throughout the trial on the fact that it wasn't that he wanted a 10:30 am schedule,  it was that he wanted a <u>flexible</u> schedule.

Q:     You requested flex time from 9 to 10 or 9:30 to 10:30, yes?

A:     Yes, but I—

Q:     and the agency did not have a flex-time policy at that time, correct?

A:     Correct

Q:     And so what they said you was,  we will allow you to start your day at 10:00 a.m., correct?

A:     yes, but not the flex-time.

| Q: | and in addition to that, there was a five minute grace period following that 10:00 a.m., right? |
|---|---|
| A: | Right, but that's not flex-time. |

See Exhibit "C," September 28, 2021 Trial Transcript at 261:15-262:13.    Yet, nothing in the records explains or supports *why* a flexible start time was related to his disability.

Even if one credits the plaintiff's assertion that his disability required him to avoid rush hour, although again that does not require a flexible start time, nevertheless even that is belied by his own testimony.  As of the fall of 2014,  the agency reinstated agency wide flex time and gave all of its employees the ability to begin their work day anytime between 8 and 10 a.m.  Consequently, Plaintiff was now able to avoid rush hour by coming into work early.  When asked about this option however,  Plaintiff openly acknowledged that he had never considered or attempted this because he preferred to sleep.

| Q: | Fair to say that the subway at about 7:15 a.m. is not overly crowded, sir? |
|---|---|
| A: | I wouldn't know.  I don't take the train at that time. |
| Q: | Right, so Mr. Kornmann, you never tried to take the train at 7:15 a.m., did you? |
| A: | Well, part of the reason why I didn't try to take it is because as I detailed b before, that part of my issues are that I have problem – the morning is when I have the most, worst pain and it takes – and I don't sleep that well.  And I try to get as much sleep as I could and also have time to lessen the pain, if I take the pain medication and so on. |
| Q: | Well, Mr. Kornmann, you could wake up at 6:00 a.m., right, and stretch your legs? |

A:      I guess but I    …

Q:      You, you guess, but you don't do that, correct?

A:      I don't do that because I want to sleep, because –

See Exhibit "C," September 28, 2021 Trial Transcript at 276:25-277:15.  In sum, even though Plaintiff had available the option to begin his day at 8 am and finish it at 4 p.m. – hours which would have allowed him to travel outside of "rush hour," this was simply not his preference.

Plaintiff's desire to have his start day be flexible was not due to rush hour or his medical condition.  It was due to a long standing issue he had with timeliness.  It existed before the diagnosis of his chondromalacia,  it existed in 2000 when he had a later start time due to child care obligations, and it existed in the evenings when he was unable to appear to his therapy appointments timely.  See  Defendants Exhibit C,  September 28, 2021 Trial Transcript at 297:21-23.

In the case of Felix v. N.Y. City Transit. Auth., the Second Circuit considered the following question, "must [there] be a causal link between the specific condition which limits a major life activity and the accommodation required."  324 F.3d 102, 104.   The Court answered in the affirmative and found, "plaintiff fails to state a claim under the ADA because she did not seek accommodation "because of her disability."  Id. at 107.  In the case of Sosa v. New York City Dep't of Educ., plaintiff's ADA, New York State Human Rights Law Claim, and NYCHRL failure to accommodate claims were dismissed *sua sponte* when it was clear at an evidentiary hearing prior to trial that the plaintiff would be unable to establish a nexus between her qualifying disability and her request for an accommodation.  406 F. Supp. 3d 266, 269.  The Sosa plaintiff was  a teacher with the qualifying disability of post cancer reconstruction surgery who had sought an accommodation to have her lunch moved from 10:30 a.m. to later in the day.   Id.

11

In <u>Sosa</u>, unlike the case at bar, the plaintiff called to the stand her treating physician who had previously written documentation that "due to patient's medical condition it is advisable that patient not be given lunch prior to 12 p.m." <u>Id</u>.  When called to testify, the doctor went on to state, "certainly after surgery if you have a good eating schedule it would help healing as a general principle." <u>Id</u>. at 270.  Even with this testimony, the court found at that time that drawing all inferences in favor of the plaintiff, there was still insufficient evidence to support the fact that the plaintiff needed the requested accommodation <u>because</u> of her surgery. <u>Id</u>.  Here, Plaintiff Kornmann called no medical providers or presented any medical records to establish a factual connection between his chondromalacia and the necessity of a flex time band from 9:30 to 10:30.   While it is clear he had a longstanding issue with coming to work timely and personally wished to avoid early morning commuting – the record is absent of any medical evidence that ties his personal preference to the qualifying disability.   This failure commands that the NYCHRL failure to accommodate claim be dismissed.

**POINT III**

**PLAINTIFF FAILED TO ESTABLISH THAT HE WAS CAPABLE OF PERFORMING THE ESSENTIAL FUNCTIONS OF HIS JOB WITH OR WITHOUT AN ACCOMMODATION.**

In addition to Plaintiff's failure to establish a nexus between his stated disability, chondromalacia, and the request for a flex-time band,  he also failed to establish that he was able to perform the essential functions of his job,  a necessary element to a successful failure to accommodate claim.   After Summary Judgment,  the time period being considered for purposes of the NYCHRL Failure to Accommodate claim was April 7, 2014 through to the time of Plaintiff's suspension in November, 2016.  <u>See</u> Summary Judgment Decision, Docket Entry No: 103,  <u>See also</u>,  Defendants Exhibit "C," September 28, 2021 Trial Transcript, 159:9-11.

12

As previously outlined further above,  "under the ADA, the NYSHRL, and the NYCHRL…to establish a prima facie case based on failure to accommodate, a plaintiff must show that, (1) plaintiff is a person with a disability under the meaning of the relevant statute, (2) an employer covered by the statute had notice of its disability, (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue, and (4) the employer has refused to make such accommodations."  See Stryker v. HSBC, 2020 U.S.Dist. LEXIS 158630, *34 (S.D.N.Y. Aug. 21, 2020).  Though the NYCHRL is to be read broadly and in favor of the plaintiff,  the above elements remain crucial.  See  Ferraro v. New York City Dep't of Educ., 404 F. Supp. 3d 691, 715 (E.D.N.Y. 2017).   In short,  at trial,  it was evident that from April 2014 through to the time of his suspension,  Plaintiff was no longer able to perform the essential functions of his job, with *or* without an accommodation.

Plaintiff was employed by BIC as a computer associate and his duties were as the agency's programmer.  See  Defendant's Exhibit "B,"  September 27, 2021 Trial Transcript p. 57:19-58:15.  In the year preceding the fall of 2014, the agency had migrated from the "License View" operating system to a "Salesforce" system.  See Defendant's Exhibit "C",  September 28, 2021 Trial Transcript, 264:23-266:2.   Despite the fact that the Plaintiff was the agency's dedicated programmer, he admitted at trial that as of 2015,  he was still not fully versed in the Salesforce operating system.  See Defendant's Exhibit "C," September 28, 2021 Trial Transcript 266:19-268:5.  Additionally,  Plaintiff admitted that despite being a member of the small IT unit within the agency,  he would complain about the Salesforce system that was being implemented to other members of the agency.  See Defendants Exhibit "C," September 28, 2021 Trial Transcript 286:7-17.   Mr. Delpino,  Plaintiff's supervisor during much of this time period, outlined all of the deficiencies in the plaintiff's work.  They included time and leave issues,

13

issues with disparaging the unit's new system,  and plaintiff's overall inability to navigate the programming system now being employed by the agency.  See generally, Defendant's Exhibit "F,"  September 29, 2021 Trial Transcript, 494:3-498:9.    Most problematically,  in 2014, Plaintiff was unable to serve the agency's needs as its programmer and BIC was forced to outsource to consultants the very functions the Plaintiff was hired to do.  See  Defendant's Exhibit "F,"  Trial Transcript 470:14-477:25.

In essence,  Plaintiff was unable to establish that he could perform the essential functions of his job with or without an accommodation and that failure is fatal to any claim for a reasonable accommodation.   In the case of Ferraro v. Dep't of Education, the court found that "defendants repeatedly sought to provide plaintiff with additional support because he was struggling [with his work] …plaintiff refused defendants' offers of assistance…[further] he submitted work…long after deadlines had passed, or never handed in his work at all.  404 F. Supp. 3d. 691, 714.  "Plaintiff has not demonstrated that he was qualified with or without accommodation and indeed, his repeated failure to meet the demands of his position shows that he was not qualified."  Id.   Indeed,  in Ferraro, the court found that, "even construing Plaintiff's claims broadly in his favor, as the Court must when evaluating NYCHRL claim, the Court still finds that Plaintiff could not have performed the essential functions of his position, with or without reasonable accommodation…therefore, plaintiff's NYCHRL failure to accommodate claim also fails on the merits."  Id.    So too here,  setting aside any request for an accommodation,  when evaluating plaintiff's ability to work during the relevant time period, April 2014 through November 2015 – the uncontroverted record establishes that plaintiff was no longer qualified to perform the essential functions of his job duties as BIC's computer programmer.   This inability requires that his NYCHRL claim be dismissed.

## <u>CONCLUSION</u>

For all of the reasons stated above, Defendants respectfully request that the Court grant their motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and enter judgment for the Defendant along with such other and further relief as to this Court deems just and proper.

Dated: New York, New York
       November 1, 2021

**GEORGIA E. PESTANA**
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street, 2-175
New York, New York 10007
(212) 356-2460
jgiambro@law.nyc.gov

By:    */s/*_____

       Jessica Giambrone
       Senior Counsel

By:    */s/*_____

       Rebecca Quinn
       Assistant Corporation Counsel

15